He has allotted to counsel. The first case today is 15-1522, United States v. Joel Wetmore. Mr. Craven. Good morning and may it please the court. If I could reserve a minute or so for rebuttal, that would be helpful. Two minutes. Thank you. This is a simple case and the parties are in agreement on much of it. Joel Wetmore has made enormous progress. The question is, does he still lack the capacity to restrain himself from acting on his pedophilic desires? Three doctors testified in the hearing before Judge Sarris. Dr. Hernandez, the director of the program at Butner, was never asked if he had an opinion as to whether or not Joel Wetmore was still sexually dangerous. And let me say right now, I should have said it earlier, Joel Wetmore now agrees that the BOP was right in certifying him eight or nine years ago. He now agrees that Judge Sarris was right in committing him and that this court was correct in affirming her decision. And he's come to that position very gradually over a long period of time through an enormous amount of internal work. But he's in agreement now and he's very thankful and grateful for what has happened in his life in the last six or eight years. At the same time, he believes now with Dr. Plod that he's good to go and that we've reached the point of diminishing returns. Judge Sarris made it pretty clear that if Joel Wetmore would just complete the treatment program at Butner, he would no longer be sexually dangerous and she'd send him home to Maine. Dr. Graney, the staff psychologist at Butner, made it equally clear I think in her report and in her testimony that that's what she was waiting on, for him to complete the program. We all agree it would be good if he completed the program, but only three or four men have completed the program in the eight years it's been in existence. It tends to go on and on and on and on. And many have been released from Butner, many 4248 respondents have been released from Butner without ever entering the program, let alone completing it. And as Judge Britt noted in his opinion in the Glenn Wright case, which is in the record, many don't trust the program. Joel Wetmore voluntarily entered the program and voluntarily remains in it, but we believe he's now reached the point where he can go home. You may believe that, but the standard of review for us is whether Judge Sarris, who made careful findings, committed clear error in her factual findings or committed an error of law. Start with which you're arguing or are you arguing both? No, no, not the error of law, I'm arguing that she erred in her factual findings. Okay, then could you be specific? Sure, I will, Your Honor. It's not a matter of credibility. None of the witnesses lied, they were all truthful. But it was clear error, I think, to so prefer what Dr. Graney had to say over what Dr. Plowd had to say. Why? Specifically, let me ask you this question. I think in one of your briefs you mentioned that Dr. Plowd had, I guess, re-interviewed him and gone over the record prior to testifying, and that the others had not seen him again, had not seen him for some time. Did you make any objection to the testimony of the first two doctors on the grounds that they had not seen him recently enough? No, but that was, I did not object to their testimony, and I don't think it was objectionable, but I did, I argued that. You argued that their testimony basically was based on stale information? Yes, sir. Now, what was the clear error on the part of Judge Saras in rejecting that argument? Well, I think we have to go back to the fact that Dr. Graney made it clear that if he would just complete the program, in her eyes he's good to go. She made it equally clear, in fact, she stated that she had never signed a report recommending someone for release. Never. Dr. Joe Plowd, on the other hand, has testified in zillions of these cases, sometimes for the respondents, sometimes for the government. His experience in these cases is so vastly superior to hers. It's not a matter of credibility. It's not a matter of Judge Saras choosing to believe Dr. Graney and disbelieving Dr. Plowd. I mean, they were both telling the truth, for heaven's sakes. Well, they both may have been telling the truth, but I assume she found one more plausible than the other. She did. She did, and I think that's where. That's not truth-telling. That's reliability. That's exactly right, and that's where I think she was wrong, with all due respect to her. And, you know, completing the program is not synonymous with no longer sexually dangerous. But Judge Saras and Dr. Graney made it very clear that if Joel Wentmore would just complete the program, they would certify him as good to go and he'd be home in Maine. But Joel Wentmore didn't complete the program, and we're concerned with what his status was at the time of the hearing in the district court. And the district court was faced with conflicting opinions from qualified psychologists as to whether or not he could be safely returned to the community. So I'm struggling with the notion of how it can be clear error for her to say that she found one psychologist's opinion more convincing or more plausible than another's. I think you have to go further than that and look at what she said about completing the program. She made it abundantly clear that if he'd just complete the program, the case is over and he goes home. But that's not the issue before us. The issue before us is what his status was at the time of the hearing. Well, she found that he continued to meet that third prong under 4248 only because he hadn't completed the program. And that's where the error is. You don't have to complete the program. As Dr. Plawd said, there's 75 ways to get to third base. He got there. The easiest is to hit a triple, but there are a lot of other ways. Well, except to say the obvious, we're not dealing with numbers here. This isn't a math exercise. And one way to look at the testimony of those who said if he would only complete the program, we would probably view or would view things differently is to say we're not quite sure yet. And we would be closer to sure if he had completed the program. And there's nothing necessarily or clearly unsound about accepting that view, is there? That is absolutely one way to view it, and I agree completely. But on a clear error standard, isn't that the way we've got to view it? That's a possibility. Maybe. You may be right on that, sir. I think, though, that this court is allowed to go beyond that and look at the importance Judge Sarris put on completing the program just for the sake of completing the program, and the fact that only three or four guys have completed it in eight years, and many have been released without it. Thank you. You still have your two minutes. Thank you, Judge. May it please the Court, Jennifer Serafin of the United States. Please speak up. Sorry, Your Honor. Thank you. In this case, Judge Sarris committed no error, let alone clear error. Judge Sarris found that Mr. Wetmore remained sexually dangerous for two reasons. The first is that as of the hearing date, he continued to have persistent, inappropriate urges related to boys between the ages of 11 to 14, and that he was regularly masturbating to those sexual fantasies and thoughts that he was having. There were two doctors who testified on the government's behalf, Dr. Plott and Dr. Graney, at issue with some of the testimony that Dr. Graney provided. She had some very recent experience with Mr. Wetmore, and Judge Sarris credited her testimony in that regard. Just a couple months before the hearing, Mr. Wetmore told Dr. Graney that he was having inappropriate sexual thoughts about eight times a day, and that he was masturbating to those thoughts several times a week. And this is something that was concerning to Judge Sarris. In addition, Mr. Wetmore told Dr. Graney that he was so struggling with his urges that he believed the only way he wouldn't re-offend is if he underwent chemical castration. And again, Judge Sarris was well within her discretion to credit that testimony of Dr. Graney. The second reason that Judge Sarris found that Mr. Wetmore remained sexually dangerous is that he failed to complete the commitment and treatment program at Butner. This, again, was one of two reasons that Judge Sarris found he remained sexually dangerous. She said that given Mr. Wetmore's lengthy offending history, it made sense for him to continue his progress within the program and hopefully eventually complete it. There are four phases to the program. As of the date of the hearing, Mr. Wetmore was in phase three. So, Your Honors, under the clear error standard, Judge Sarris was able to and did credit the testimony of Dr. Hernandez and Dr. Graney, and to discredit, to some extent, the testimony of Dr. Plodd, who interviewed Mr. Wetmore twice. The first time he interviewed him, he found that Mr. Wetmore remained sexually dangerous. He interviewed him again ten months later and changed his opinion, and Judge Sarris did not give full weight to that testimony. And again, that was well within her discretion to do so. For these reasons, Your Honor, the government urges the court to affirm, because there is no error here. In fact, the only error that Mr. Wetmore can point to is the fact that Judge Sarris didn't find in his favor, and that certainly doesn't meet the clear error standard. So unless there are questions, the government will rest on its brief. Thank you, counsel. Thank you. I think it's obvious that Joe Wetmore is always going to have these thoughts. He's always going to have these urges. Pedophilia is not a crime. Acting on it is. Pedophilia is a disease. Acting on it is a crime. Of course he has these urges. Of course he has these thoughts. I don't care how often he masturbates or what he thinks about while he's doing it. Isn't that in a way what we want him to do, as opposed to acting out criminally on these thoughts and urges that he is likely always going to have? And he recognizes, he made it very clear in his testimony, and in what he told Dr. Claude, he recognizes that this is going to be always one day at a time, just like dealing with alcoholism. He's likely always going to have these thoughts and these urges, but he has acquired tools in part through the three and a half years he spent in Dr. Hernandez's program. He has acquired relapse prevention tools that will help him overcome these urges and thoughts. They're not going to go away. Dr. Claude said, you know, he's not a eunuch in training. He's always going to have these thoughts. But the question is, is he going to act on them? And I think we made it clear at the hearing that he's not and that he has the requisite tools now to go forward with the rest of his life and not disappoint himself or hurt others. He has come a long way, and I have to say I'm very, very proud of him. Thank you, Your Honor. Thank you, counsel.